### SPENCER v. GRANGER.
Civ. No. 9081.

United States District Court,
W. D. Pennsylvania.
Jan. 30, 1952.

206

Lloyd W. Kennedy (of Kennedy & Kennedy), Chicago, Ill., and John E. Dwyer (of Jones, Benson & Dwyer), Erie Pa., for plaintiff.

Leland T. Atherton, Sp. Asst. to Atty. Gen., and Edward C. Boyle, U. S. Atty. for the Western Dist. of Pennsylvania, Pittsburgh, Pa., for defendant.

BURNS, District Judge.

The parties in this case have filed a comprehensive stipulation of facts which, insofar as pertinent, is herewith adopted. Many of the facts recited in the stipulation will be reiterated in the findings set forth below.

Findings of Fact.

1. Plaintiff resides and maintains his place of business and office in Erie, Pennsylvania.

2. The office of defendant, the duly appointed Collector of Internal Revenue for the 23rd District of Pennsylvania, is in Pittsburgh, Pennsylvania.

3. On or about December 30, 1943, plaintiff sold to one James W. Vicary, of Erie, Pennsylvania, 61⅔ shares of common stock, $100 par value, of the Erie Enameling Company (hereinafter called "Enameling"), a Pennsylvania corporation whose principal place of business is in Erie, Pennsylvania.

4. Said sale was pursuant to an oral agreement which provided for payment in

cash of 10% of the purchase price ($54,687.-50), $5,468.75, and the $49,218.75 balance in installments.

5. On the same date, Vicary executed a written assignment to plaintiff of all future cash dividends on those aforementioned shares of stock. This assignment was to continue until the $49,218.75 balance had been paid. A special provision in the event that Vicary died before the total balance had been paid is included in the assignment.

█ 6. The cost basis of the 61⅔ shares, when plaintiff purchased them in 1922, was $6,166.67.[1]

7. At the same time as Vicary assigned the Enameling dividends to plaintiff, he gave plaintiff a 3% promissory note, executed by himself, in the sum of $49,218.75. The note, non-negotiable and non-assignable without Vicary's written consent, stated that the sum due was to be paid solely out of (a) Enameling dividends, which Vicary thereafter expected to receive, (b) payments to be made to him as participant in the Enameling bonus fund, and (c) such amounts from his personal resources as he wished to make. A similar recital is contained in the assignment dated December 30, 1943.

8. Plaintiff reported the transaction with Vicary as an installment sale of personal property governed by Section 44(b) of the Internal Revenue Code, 26 U.S.C.A. § 44(b). Figuring his sale price as $54,687.50 and his gross profit as $48,520.83, plaintiff calculated his profit as being 88.7238%. Taking that percentage of $5,468.75 (the down payment made by Vicary), plaintiff computed a gain of $4,851.96,[2] 50% of which was reported as a long-term capital gain.

9. On December 30, 1943, Vicary also bought a like amount of stock of Enameling

from one H. Eric Schabacker. The terms of this transaction were the same. Schabacker, Vicary, and plaintiff thereafter constituted the board of directors of Enameling, each director owning the same amount of stock.

10. Enameling neither declared nor paid cash dividends in 1944 or 1945.

11. In 1944, Enameling paid Vicary a cash bonus of $2,157.92. Out of that bonus, Vicary paid plaintiff $760, to be applied against the principal sum due on his note. No interest payment was made to plaintiff.

12. In 1945, Enameling paid Vicary a cash bonus of $755.95. Of that, Vicary paid plaintiff $350, to be applied against the principal sum due on his note. No interest payment was made to plaintiff.

13. Plaintiff orally waived the requirement that the entire bonus payment to Vicary be utilized to discharge Vicary's indebtedness to him and Schabacker.

14. Plaintiff did not report receipt of either the $760 or the $350 in his 1944 or 1945 income tax returns, although the stipulation does recite that plaintiff has paid income taxes upon those sums, the same basis being utilized as was employed with the down payment, Finding No. 8, supra. In the early part of 1947, taxpayer filed an amended and a second amended income tax return for the calendar year 1943; in both, he permitted to stand, substantially unchanged,[3] his original inclusion of 50% of $4,851.96 as a long-term capital gain (see Finding No. 9, supra).

15. On April 28, 1945, a meeting of the board of directors of Enameling was held. Policy differences, stemming in part from Vicary's dissatisfaction with the failure of Enameling to pay dividends, culminated in a decision that Enameling buy Vicary's

1. Enameling was being recapitalized at the time of the sale by plaintiff to Vicary. Subsequently the 61⅔ shares were exchanged for 3,125 shares of the newly-authorized no-par common stock of the same company, in a tax-free exchange. Consequently, these 3,125 shares had the 1922 cost basis, $6,166.67.

2. This was, of course, a miscalculation, the correct sum being $4,852.08.

3. The first amended return, perhaps inadvertently, gave the long-term capital gain as $2,553.12. The second amended return, however, reverted to the $2,554.12 figure in recomputing plaintiff's asserted long-term capital position for that year.

stock at $17.70 per share;[4] that Enameling buy Schabacker's at $17.50 per share; and that, if the arrangements effectuating these purchases were not carried out by noon of April 30, 1945, Enameling was to buy out plaintiff instead, at $17.70 per share.

16. If the purchase of Vicary's and Schabacker's stock had been made in accordance with the terms set forth in the minutes of the April 28 directors' meeting, Enameling would have been required to make cash payments totalling $140,000, and to give a note for $80,000. Had plaintiff's interest been bought by Enameling under the alternative plan, Enameling would have had to pay plaintiff $55,312.50 in cash and to give him a note guaranteed jointly by Vicary and Schabacker for the remaining half.

17. At the close of business on April 30, 1945, the earned surplus and undivided profits of Enameling, as shown on its books, was $71,780.79.

18. After said directors' meeting but before the April 30 deadline, plaintiff was advised by counsel that purchase of the stock by Enameling would be illegal because the purchase price exceeded the earned surplus of the company, and that plaintiff would consequently have to buy the stock personally.

19. Thereafter, on April 30, 1945, another directors' meeting was held, Vicary being absent. Plaintiff proposed an alternative plan, suggested by counsel, which was adopted. This plan called, *inter alia*, for (a) the re-purchase, so designated, by plaintiff of the 376 shares of Enameling which the sums given plaintiff by Vicary ($6,578.75) would have bought at $17.50 per share; (b) the re-purchase by plaintiff of the 376 shares of Enameling for which Vicary had paid Schabacker; (c) a "bonus, or additional payment, of $1250.00" by plaintiff to Vicary; (d) surrender by plain-

tiff and Schabacker of the Vicary notes "in complete cancellation and recission [sic] of the purchase agreements of December 30, 1943, except as to the 376 shares of each agreement which has been purchased by Mr. Vicary pursuant to the contracts"; and (e) the purchase by plaintiff of Schabacker's original holdings, to which holdings the shares transferred to Vicary in 1943 were to be returned, at $17.50 per share. The action taken at the April 28 meeting was to be "rescinded to the extent that it [was] inconsistent with" the plan here outlined.

20. In effectuating the adopted plan of April 30, the three directors did not cancel the Vicary notes, with an exchange of the transferred stock certificates and the sums paid by Vicary. Instead, (a) Vicary gave his personal check, for $48,108.75, the unpaid balance on the note, to plaintiff, and a like check to Schabacker; (b) plaintiff, borrowing money from Enameling, gave Vicary an Enameling check for $110,625, representing $17.70 per share for 6,250 shares;[5] (c) plaintiff paid Schabacker $157,483.75 for 8,999 shares of Enameling at $17.50 per share, this sum consisting of a $5,000 personal check and $80,000 note of plaintiff, Vicary's $48,108.75 check to Schabacker, and a $24,375 Enameling check charged to plaintiff; and (d) plaintiff endorsed to Enameling the $48,108.75 check which Vicary had given him, thereby reducing his total loan from Enameling to $86,891.25, which he acknowledged in a 3% note he gave Enameling.[6]

21. On April 30, 1945, Vicary did not have more than $2,000 in his personal checking account.

22. The fair market value of Enameling stock on April 30, 1945, was $17.70 per share.

23. After acquiring the shares formerly held by Schabacker and Vicary, plaintiff

---

4. The cost of the shares to Vicary, adjusted to reflect the recapitalization, was $17.50 per share.

5. It is noted that the plan treated Vicary as having fully paid for, and become sole owner of, only 752 shares, but that the amount here given Vicary by plaintiff in-

cluded a so-called bonus of $0.20 per share on all 6,250 shares, not just the 752.

6. It will be assumed that Enameling was authorized to lend, and plaintiff to borrow, this sum.

owned about 98% of the Enameling stock. He made periodic payments on his 3% note to Enameling, which obligation was finally discharged in 1949.

24. Plaintiff did not report in his federal income tax return for 1945 any tax consequences flowing from the events of April 30, 1945, unless it be the deduction of $1,510.07 interest to Enameling, if such interest payments stemmed in whole or in part from the loan of April 30. [7, 8]

25. After investigation and review of plaintiff's 1945 income tax return, the Internal Revenue Agent in Charge determined, and, on January 29, 1948, notified plaintiff by letter, that the acquisition of the 3,125 shares of Vicary constituted either a repurchase or a repossession, either of which would involve a reportable gain of approximately $42,683.

26. On February 8, 1949, plaintiff signed a Treasury Department Form 874, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment for the taxable years 1943, 1944, 1945.

27. On May 6, 1949, under protest and for the purpose of stopping interest, plaintiff paid defendant $13,176.83 in discharge of the claimed $11,176.80 tax deficiency and $2,000.03 interest. $12,580.16 of this sum is attributable to the reacquisition of the Enameling stock from Vicary.

28. Plaintiff's claim for refund on January 23, 1950, was rejected by a Deputy Commissioner of Internal Revenue on June 20, 1950.

29. Plaintiff has not received any refund or credit against any other liability of or for any portion of the tax and interest, the overpayment of which is the subject of this suit.

30. Although the term "rescission" was employed by the Enameling directors in their negotiations of late April, 1945, analysis of the relationship between them and of their negotiations impels the finding that it was not the intent of any of the participants to revert to the status prior to December 30, 1943, or to eliminate the legal effects of their business association during the ensuing sixteen months after that date. Instead, the Enameling directors, by mutual consent, on April 30, 1945, promulgated a new agreement, under the terms of which plaintiff acquired the interests of Vicary and Schabacker. Insisting upon receiving $1,250 in lieu of the $0.20 per share dividends which he believed Enameling should have paid him, Vicary unmistakably disclosed that he was not content to surrender his interest for its assigned value in December, 1943. Likewise, the existence of the contingent provision calling for the purchase of plaintiff's interest if Vicary and Schabacker were not paid off by May 1, 1945, identifies the transaction as one designed and effectuated to shift corporate control and not to wipe out a prior contract.

## Conclusions of Law.

1. This Court has jurisdiction under 28 U.S.C. § 1340, 28 U.S.C.A. § 1340.

2. The oral agreement of December 30, 1943, between plaintiff and Vicary was a completed sale of the Enameling stock; and that transaction was a casual sale of personal property on the installment basis within the meaning of section 44(b) of the Internal Revenue Code, 26 U.S.C.A. § 44(b).

3. The agreement of December 30, 1943, was not rescinded, either in fact or in law, by either the agreement of April 28, 1945, or that of April 30, 1945.

4. Plaintiff realized a taxable gain in 1945 when Vicary discharged his outstanding installment obligation of 1943 to plaintiff.

---

7. The 1945 payments made by plaintiff on the note totalled $27,891.25.

8. On his 1945 tax return, plaintiff did report the sale, on May 29, 1945, of 387 shares of the capital stock of Enameling. Of the 387, 320 shares were sold to members of his family, his three children and his brother. The holding in the instant case renders it unnecessary to consider the tax effect of this family transaction, except to state Conclusion of Law No. 5, *infra*.

5. Plaintiff was not entitled to the loss claimed in his 1945 income tax return on the family sale of Enameling stock.

6. Defendant is entitled to an order dismissing the complaint, with costs. An appropriate order is herewith entered.